IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
FACEBOOK USER ID
**"james.barber.52056"** THAT IS STORED
AT PREMISES CONTROLLED BY
FACEBOOK INC.

Case No. 3:20-mj-00102-MMS

**Filed Under Seal**



Mar 06 2020

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Sarah Foreman, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.      I am a Special Agent for the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since October 2009.  Prior to becoming a Special Agent with ATF, I obtained a double Bachelors degree in Business Administration for Management and Marketing with a minor in Psychology from the University of Alaska, Anchorage.  I continued my education earning a Master's degree in Public Administration with emphasis on Criminal Justice through the University of Alaska, Southeast.

3:20-mj-00102-MMS



3.      As a Special Agent for the Bureau of ATF, I have completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia and Special Agent Basic Training for the ATF.  Since becoming a Special Agent with the ATF, I have participated in numerous federal, state and local investigations involving violations of Federal law, typically pertaining to firearms, narcotics, arsons and explosives, many of which involved the use of cellular telephones and social media. Through my training and experience, I have learned that individuals engaging in criminal activities often use cellular phones and social media applications on their cellphone (such as Facebook) to communicate with each other.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.  All dates in this affidavit are approximate.

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 USC § 1512(b)(1) and (2), *i.e.* Tampering With a Witness or Informant, have been committed by James Edward BARBER.  There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

### PROBABLE CAUSE

6.      I am familiar with the "Alaskas rats" group on Facebook, as a place where members primarily post messages and photos referencing individual(s) believed to be cooperating with law enforcement or are undercover law enforcement officers. Based on my

2                                              3:20-mj-00102-MMS



training and experience, I believe that one of the primary purposes of posts on "Alaskas rats" is to intimidate witnesses or to induce other people to intimidate witnesses.

7.      I am familiar with an Anchorage Police Department investigation (APD #18-34141) involving a homicide that occurred in approximately August 2018.

8.      Further, I am familiar with the case of *United States v. Markanthony Sapalasan*, 3:18-cr-00130-TMB-MMS, a pending prosecution in the District of Alaska. Docket 137 in that case, dated 01/24/2020, is an order of release for Sapalasan to the House of Transformation Monday January 27, 2020, after being in custody since October 30, 2018.

9.      Further, I am familiar with *United States v. James Edward Barber*, 3:19-cr-00093-RRB-MMS, another prosecution pending in the District of Alaska. Docket 84 in that case, dated 1/21/2020, is an order of release for BARBER for January 22, 2020, after being in custody since July 27, 2019.

10.      On or about February 26, 2020, I observed on Facebook the following post, which I have cropped for the purpose of protecting the identity of the witness(es):

//

//

//

//

//

//

//

//

//

Case 3:20-mj-00102-MMS   Document 1-1   Filed 03/06/20   Page 3 of 11





**7:45** ⏎        ▁▂▃ 5G E ▭

    🔍   Search in Alaskas rats    

 **James Barber**
February 14 at 10:23 PM · 👥   •••

In just going to leave this here ...



11.     The time observed in the screenshot is 0745hr Pacific Time (0645AKST).  Based upon your affiants training and experience, Facebook does not include the year with the date of the post if it during the current calendar year.

12.     The photo of "James Barber" depicts the defendant in *United States v. James Edward Barber*, 3:19-cr-00093-RRB-MMS.

4            3:20-mj-00102-MMS

13.    I reviewed discovery page 369 in *United States v. Markanthony Sapalasan*, 3:18-cr-00130-TMB-MMS. The discovery is regarding a statement, made in approximately October 2018, to the APD, regarding the homicide mentioned above. The image posted by James BARBER appears to depict a black-and-white printout of almost all of that discovery page. The original post depicts more of the discovery page than is depicted above, which is partially cropped to protect witness(es).

14.    The Facebook UserID of the account in which this post was made was: **james.barber.52056**

15.    A preservation request was submitted to Facebook via their website, receiving a request receipt at 0911hrs AKST, reference Preservation Request Case #: 4547866.

16.    I queried the "Alaskas rats" Facebook page and observed what appear to be comments, posted by James BARBER, dated as early as "2y," meaning two years ago, in response to a post dated January 3, 2018. In that comment, James BARBER referred to a police-involved shooting that occurred in approximately November 2017.

**Information Regarding Facebook**

17.    Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

18.    Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical

Case 3:20-mj-00102-MMS   Document 1-1   Filed 03/06/20   Page 5 of 11

address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

19.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

20.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

21.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations

Case 3:20-mj-00102-MMS   Document 1-1   Filed 03/06/20   Page 6 of 11


to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

22. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

23. Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

24. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

25. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as

Case 3:20-mj-00102-MMS   Document 1-1   Filed 03/06/20   Page 7 of 11



webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

26. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

27. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

28. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

29. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

30. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

31. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date),

8                                                                      3:20-mj-00102-MMS

the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

32.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access,

Case 3:20-mj-00102-MMS   Document 1-1   Filed 03/06/20   Page 9 of 11

use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

33.     Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

34.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

35.     Based on the foregoing, I request that the Court issue the proposed search warrant.

3:20-mj-00102-MMS

36.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Facebook. Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

37.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

38.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

Sarah Foreman
Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Subscribed and sworn to before me on ___March 6_____, 2020

_____
UNITED STATES MAGISTRATE JUDGE

3:20-mj-00102-MMS